UNITED STATES OF AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

DAVID-JOHN MCDONALD,
RYAN K. GUIMOND, and
CATHERINE PETRILLI,

   Plaintiffs,          DEMAND FOR JURY TRIAL

 -vs-

ASSET ACCEPTANCE LLC,

   Defendant.

## COMPLAINT – CLASS ACTION & JURY DEMAND

*NB:* *Related cases include Havlena v. Asset Acceptance, No. 2:11-cv-11122-MOB-MAR (E.D.Mich.), Asset v. McDonald, No. 11-6406-GC (53rd Judicial District Court of Michigan), Asset v. Guimond, No. GC11H186 (43rd Judicial District Court of Michigan), and Asset v. Catherine Petrilli, No. 10-04682GCB (54th Judicial District Court of Michigan), and two cases in Illinois state courts.*

## Jurisdiction

1. This court has federal question jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. §1692k(d), and 28 U.S.C. §§1331 and 1337.

## Parties

2. Plaintiff David-John McDonald is a resident of Howell, Michigan.

3. Plaintiff Ryan K. Guimond is a resident of Ferndale, Michigan.

4. Plaintiff Catherine Petrilli is a resident of Lansing, Michigan.

5. Asset Acceptance LLC ("AALLC") is a limited liability company with its principal place of business in Warren, Michigan.

6. At all relevant times, AALLC – in the ordinary course of its business – regularly engaged in the practice of collecting debts originally owed to other entities, using the mails and telephone system for that purpose.

7. AALLC is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

8. According to the annual report on SEC Form 10-K filed by its parent, Asset Acceptance Capital Corp. for 2010 ("Form 10-K"), between January 1, 2001 and December 31, 2010, AALLC acquired 2,539,000 accounts allegedly owed by Michigan debtors, with a total face value of $2,145,485,000. (Form 10-K, original page 6.) These and other statistics do not include interest after purchase added by AALLC.

9. The same document states (Form 10-K, original page 46) that legal collections accounted for 44.8% of all collections of AALLC, and (*id.*, original pages 12, 44, and 46) that AALLC employs "standardized collection methodology".

10. Nationally, "from January 1, 2001 through December 31, 2010, [AALLC] purchased 1,182 consumer debt portfolios, with an original charged-off face value of $43.3 billion for an aggregate purchase price of $1.1 billion, or 2.57% of face value, net of buybacks." (Form 10-K, original page 1.) Of these, 53.2% were general purpose credit card debts and an additional 15.3% private label credit card debts (*Id*., original page 5.)

### Venue

11. Venue is proper in the Eastern District of Michigan, where defendant is headquartered.

### Allegations relating to plaintiff David-John McDonald

12. AALLC, through in-house counsel, sued David-John McDonald for an alleged credit card

debt in the courts of the State of Michigan (specifically, the 53rd Judicial District Court, Case No. 11-6406-CC). The alleged credit card debt was incurred for personal, family or household purposes.

13. A copy of the complaint in the state court case, and the exhibits thereto, are attached as Exhibit 1.

14. AALLC claims to have purchased the alleged debt on July 27, 2007.

15. AALLC claims that the date of delinquency was December 21, 2005.

16. Under federal banking regulations, a credit card debt **must** be charged off when it is 180 days overdue (it may be charged off earlier). Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 12, 2000).

17. Chargeoff means that the credit card receivable is no longer carried on a bank's books as an asset.

18. In the McDonald case, the debt was required to be charged off not more than 180 days after December 21, 2005, or by June 2006.

19. AALLC claimed that the amount charged off was $6,964.48.

20. AALLC demanded $3,651.87 interest as of February 23, 2011, computed at a rate of 11%.

21. At 11%, interest on $6,964.48 is $766.09 per year.

22. The $3,651.87 interest therefore amounted to 4.76 years' worth of interest, and included interest prior to the date on which AALLC claims to have purchased the debt.

**Allegations relating to plaintiff Ryan K. Guimond**

23. AALLC, through in-house counsel, sued Ryan K. Guimond for an alleged credit card debt

        in the courts of the State of Michigan (specifically, the 43rd Judicial District Court, Case No. GC11H186).  The alleged credit card debt was incurred for personal, family or household purposes.

24.    A copy of the complaint in the state court case, and the exhibits thereto, are attached as Exhibit 2.

25.    AALLC claims to have purchased the alleged debt on June 13, 2008.

26.    AALLC claims that the date of delinquency was September 12, 2005.

27.    The debt was therefore required to be charged off not more than 180 days later, or by March 2006.

28.    AALLC claimed that the amount charged off was $1,752.35.

29.    AALLC demanded $744.07 interest as of February 17, 2011, computed at a rate of 10%.

30.    At 10%, interest on $1,752.35 is $175.24 per year.

31.    The $744.07 interest therefore amounted to 4.25 years' worth of interest, and included interest prior to the date on which AALLC claims to have purchased the debt.

32.    The bank from which AALLC allegedly purchased the debt did not charge interest after the chargeoff.

### Allegations relating to plaintiff Catherine Petrilli

33.    AALLC, through in-house counsel, sued Catherine Petrilli for an alleged credit card debt in the courts of the State of Michigan (specifically, the 54th Judicial District Court, Case No. 10-04682GCB).  The alleged credit card debt was incurred for personal, family or household purposes.

34.    A copy of the complaint in the state court case, and the exhibits thereto, are attached as

Exhibit 3.

35. AALLC claims to have purchased the alleged debt on April 15, 2010.

36. AALLC claims that the date of delinquency was February 6, 2008.

37. The debt was therefore required to be charged off not more than 180 days later, or by August 2008.

38. AALLC claimed that the amount charged off was $1,058.48.

39. AALLC demanded $427.51 interest as of October 28, 2010, computed at a rate of 18%.

40. At 18%, interest on $1,058.48 is $190.53 per year.

41. The $427.51 interest therefore amounted to 2.24 years' worth of interest, and included interest prior to the date on which AALLC claims to have purchased the debt.

42. The bank from which AALLC allegedly purchased the debt did not charge interest after the chargeoff.

## Factual allegations – general

43. It is the policy and practice of AALLC to add interest to debts for the period prior to the date on which AALLC claims to have purchased the debt, if the prior owner of the debt did not add interest during that period.

44. The bank from which AALLC allegedly purchased the debt did not charge interest after the chargeoff.

45. Most of the debts which defendant seeks to collect are credit cards originally issued by banks.

46. The standard form credit card agreements used by banks provide that the banks may change the terms of the agreement from time to time, and that changes beneficial to the consumer

such as a reduction in or waiver of interest may be effected immediately and without notice.

47. As a standard practice, and for a variety of sound business reasons, most banks waive interest on credit card debts after chargeoff for as long as the debts are held by the banks.

48. Among other reasons for this practice, banks are now required to send periodic statements on all accounts, including defaulted accounts, for any period during which interest or fees are added to the account. Regulation Z, 12 C.F.R. §226.5(b)(2)(i) ("A periodic statement need not be sent for an account if the creditor deems it uncollectible, if delinquency collection proceedings have been instituted, [or] if the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account . . . ."). Banks generally prefer to waive the interest and save the expense of preparing and sending statements.

49. AALLC only took what the assignor could give. If the assignor waived the right to add interest post-charge-off, AALLC acquired the debt (if at all) subject to that waiver.

50. AALLC often purchases, or claims to purchase, credit card debts from banks months, or years, after the bank has charged off the debts.

51. AALLC uses a document similar to Exhibit B to Exhibit 1 in all lawsuits it files in Michigan, and in other states.

52. The filing and service of such documents are representations that AALLC has the right to add interest for the period between chargeoff and purchase.

53. On information and belief, the "standardized collection methodology" employed by AALLC includes a standardized procedure for filling out Exhibit B to Exhibit 1 with respect to the dates, amounts of interest, and rates of interest.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT – CLASS CLAIM

54. Plaintiffs incorporate paragraphs 1-53 by reference.

55. AALLC violated 15 U.S.C. §§1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1), with respect to plaintiffs and each other person who had interest added by AALLC to the claimed amount of their alleged debts, that had not been added by the alleged owner of the debt at the time.

56. Further, AALLC engaged in a deceptive collection practice (contrary to 15 U.S.C. §1692e) and an unfair debt collection practice (contrary to 15 U.S.C. §1692f), for adding unauthorized interest to alleged debts, including the alleged debt of plaintiffs.

57. 15 U.S.C. §1692e provides that

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section....**
>
> **(2)    The false representation of –**
>
> **(A)    the character, amount, or legal status of any debt....**
>
> **(10)   The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....**

58. 15 U.S.C. §1692f provides that

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....**
>
> **(1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law....**

### Class Allegations

59. Plaintiffs bring this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

60. The class consists of (a) all individuals (b) from whom AALLC attempted to collect a credit card debt, (c) who had interest added by AALLC to the claimed amount of the alleged debt that had not been added by the alleged owner of the debt prior to purchase by AALLC, (d) at any time between a date one year prior to the filing of this action and a date 20 days after the filing of this action.

61. The members of the class are so numerous that joinder of all is not practicable.

62. On information and belief, there are at least 40 individuals within the defined class.

63. There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether defendant has a standardized procedure for filling out Exhibit B to Exhibit 1 with respect to the dates, amounts of interest, and rates of interest;

    b. Whether defendant engages in a practice of adding interest to debts for periods prior to the purchase of debts, that had not been added by the alleged owners of the debts at the time; and

    c. Whether such practice violates the FDCPA.

64. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

65. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and FDCPA litigation.

66. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

b.  Members of the class are likely to be unaware of their rights; and

c.  Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

## Demand for Jury Trial

67. Plaintiffs demand trial by jury in this action.

## Demand For Judgment for Relief

ACCORDINGLY, plaintiffs respectfully request that the Court:

a.  Assume jurisdiction over all claims;

b.  Award actual damages including all excess interest paid;

c.  Either award actual damages equal to all excess interest charged but not paid, or order that such interest be cancelled;

d.  Award statutory damages;

e.  Award statutory costs and attorney fees; and

e.  Provide for all other proper relief.

    Respectfully Submitted,

    ADAM G. TAUB & ASSOCIATES
    CONSUMER LAW GROUP, PLC

    By:   s/ Adam G. Taub
           Adam G. Taub (P48703)
           18930 West 10 Mile Rd. Suite 2500
           Southfield, MI 48075
           Phone: (248) 746-3790
           Email:  adamgtaub@clgplc.net

                                        s/ Daniel A. Edelman
Daniel A. Edelman
Cathleen M. Combs
Thomas E. Soule
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
Email: tsoule@edcombs.com,
courtecl@edcombs.com

Attorneys for Plaintiffs

Dated: July 15, 2011

T:\25789\Pleading\Complaint_Pleading.wpd