**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAVID-JOHN MCDONALD, et al.,

               Plaintiffs,

                                        CASE NO. 2:11-cv-13080

v.

                                        HON. MARIANNE O. BATTANI

ASSET ACCEPTANCE LLC,

               Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION, GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

      In this matter, Plaintiffs allege Defendant violated the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, through its practice of retroactively

imposing post charge-off interest on consumer debts it purchased from various financial

institutions.  Now before the Court is Plaintiffs' Renewed Motion for Class Certification.

(Doc. 72).  The parties also filed cross-motions for summary judgment. (Docs. 66, 67).

The Court heard oral argument on the motions on May 23, 2013, and at the conclusion

of the hearing, took the matter under advisement.  For the reasons stated below, the

Court **GRANTS** Plaintiffs' Renewed Motion for Class Certification, **GRANTS** Plaintiffs'

Motion for Summary Judgment as to Liability, and **DENIES** Defendant's Motion for

Summary Judgment.

## I.    STATEMENT OF FACTS

      During 2010 and 2011, Defendant Asset Acceptance, LLC ("Asset") filed three

separate actions in Michigan small claims court against Plaintiffs Ryan Guimond,

Catherine Petrilli, and David-John McDonald.  Each action sought to recover consumer credit card debt Asset previously purchased from the original creditors of Plaintiffs' debts.  At some point after Plaintiffs' default, the original creditors determined that these respective debts were uncollectable, and therefore decided to "charge-off" the debt. Creditors charge-off debt in accordance with federal regulations that permit the creditor to remove the debt from their financial records.  See Victoria J. Haneman, The Ethical Exploitation of the Unrepresented Consumer, 73 Mo. L. Rev. 707, 713-14 (2008) ("A credit card account is characterized as a "charge-off" account (or worthless account for taxable purposes) when no payment has been received for 180 days.").  These accounts are treated as a loss, wherein the creditor receives a tax deduction under the Internal Revenue Code.  Id. at 714.  Asset purchased Plaintiffs' charged-off accounts for pennies on the dollar and began its own collection efforts.

On April 15, 2010, Asset purchased Petrilli's debt as part of a portfolio of over 25,000 debts for 2.2% of the total outstanding amount.  Chase, the original creditor, charged-off Petrilli's debt on July 31, 2008 with a balance of $1,058.48.  The agreement between Chase and Asset stated that "[e]ach charged-off Account is enforceable for the full Unpaid Balance" and that the Unpaid Amount did not include post charge-off interest.  Subsequently, Asset added $427.51in interest to the principal from the date of charge-off to the date of the state court action.  Asset filed its collection action against Petrilli in November 2010.

On June 13, 2008, the original creditor of Guimond's debt, World Financial Network National Bank ("WFNB"), packaged and sold the debt, along with over 39,000 other debts, to Asset for six percent of the total outstanding amount.  (Doc. 66 at 3).

Prior to sale on February 12, 2006, WFNB charged-off Guimond's account at a balance of $1,752.35.  Asset then imposed $744.07 in interest from the date of charge-off to the date of the state court action.  In the purchase agreement, World Financial Bank disclosed that it did not add interest to the debt once it was "charged-off."  In addition, World Financial Bank made no warranty as to the condition of the debt.  Asset filed a collection action against Guimond on February 17, 2011.

On July 15, 2011, Guimond, Petrilli, and McDonald brought this action against Asset.  At the close of discovery, McDonald moved to dismiss his individual claims.  The Court granted the motion and dismissed McDonald from the action.  The remaining individual Plaintiffs, Guimond and Petrilli, argue that the original creditor of their respective debts waived the right to collect interest once it decided to charge-off the debts.  Plaintiffs assert that because Asset, as assignee, stands in the shoes of the original creditor, its attempts to collect interest on the accounts between the date of charge-off and the date of Asset's purchase of the accounts violated the Fair Debt Collection Practices Act ("FDCPA").  Essentially, Asset attempted to collect interest during the period when the original debtor, not Asset, owned the debt.

## III.   ANALYSIS

### A.   Class Certification

Plaintiffs' seek certification of a class consisting of:

> All individuals from whom Asset Acceptance LLC attempted to collect a credit card debt, who had interest added by Asset Acceptance LLC to the claimed amount of the alleged debt, that had not been added by the alleged owner of the debt prior to purchase by Asset Acceptance LLC, at any time between July 15, 2010 and August 4, 2011.

(Doc. 72 at 1).

3

Federal Rule of Civil Procedure 23 governs the standard by which courts address class certification.  Rule 23(a) lists the prerequisites for certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "Although Rule 23(a)(2) speaks of 'questions' in the plural, we have said that there need only be one question common to the class."  Sprague v. Gen. Motors Corp, 133 F.3d 388, 397 (6th Cir. 1998) (citing In re Am. Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir. 1996)).  A district court may only certify a class if, "after a rigorous analysis," it is satisfied that all requirements of Rule 23(a) are met.  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982).  The burden of establishing class certification falls upon the plaintiffs.  Alkire v. Irving, 330 F.3d 802, 820 (6th Cir. 2003).

In addition, once Rule 23(a) is satisfied, the plaintiffs must demonstrate compliance with one of the types of class actions enumerated in Rule 23(b).  Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), a type of class action wherein "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods" of adjudication.  Fed. R. Civ. P. 23(b)(3).  With respect to predominance, "a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'"  Beattie v.

4

CenturyTel, Inc., 511 F.3d 554, 564 (6th Cir. 2007) (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001)).

      1.   Ascertainable Class

Before turning to the Rule 23(a) factors, the Court must address whether the "class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012). Indeed, "the existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." John v. Nat'l Sec. Fire & Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007).

Plaintiffs' theory is that each original creditor waived the right to impose post charge-off interest when it decided to charge-off the account and sell it to Asset. A waiver is an intentional relinquishment of a known right, and can be implied by unequivocal and decisive acts manifesting an intention to waive the right. See Terech v. First Resolution Mgmt. Corp., 854 F. Supp. 2d 537, 541 (N.D. Ill. 2012). It is undisputed that Asset stepped into the shoes of the original creditor when it purchased the debt, and took the debt subject to any existing waivers. See id. Thus, Plaintiffs argue Asset's subsequent attempt to collect interest during the period in which the original creditor still owned each account constitutes a deceptive practice in violation of the FDCPA. Section 1692e of the FDCPA prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Based on this theory, no individual qualifies as a class member unless Asset attempted to collect interest that the original creditor waived.

5

In contrast, Asset argues that the class is not ascertainable because class membership is dependent upon a determination of liability, i.e., whether the original creditor impliedly waived its right to charge the debtor post charge-off interest. Asset asserts this determination requires a fact intensive analysis wherein the Court must individually examine each Plaintiff's situation to determine waiver.

In support, Asset principally relies on Chesner v. Stewart Title Guaranty Co., No. 1:06-cv-00476, 2009 WL 585823 *11 (N.D. Ohio Jan. 9, 2009) for the proposition that class actions involving the issue of waiver require "inquiry into the particulars of every individual transaction." The plaintiffs in Chesner asserted that defendant failed to provide a discount in connection with the purchase of title insurance during refinancing. Id. at *1. An implied term of the contract required the defendant to discount the title insurance if there was a previous purchase of title insurance on the same property. Id. At the class certification stage, plaintiffs asserted that only proof of a prior mortgage was required to trigger the discount, rather than proof of a previously purchased title policy. Id. The plaintiffs argued that defendant waived its entitlement to direct evidence of prior title insurance from all customers when it granted the discount in certain situations without direct proof. Id. However, the court noted that a "waiver analysis is performed on an individualized, case-by-case basis." Id. at *9. Necessarily, "a waiver of a contract term by a party with respect to a specific counterparty has no effect on that party's ability to enforce the same term in a separate contract with a different and unrelated counterparty." Id. Consequently, the court decertified the class because "[l]iability turn[ed] on questions that can only be answered by examining the specific facts of every individual claim." Id. at *11.

Chesner is distinguishable from the instant case.  The plaintiffs in Chesner asserted waiver by estoppel.  In other words, the defendant did not manifest the intent to waive its right through some unequivocal act, but plaintiffs believed defendant ought to be treated as such based on its conduct in other situations.  The court determined that because reliance and prejudice are necessary elements of waiver by estoppel, individualized fact finding would be necessary.  Here, however, Plaintiffs rely on an implied waiver theory.  Implied waiver, characterized as unequivocal and decisive conduct manifesting intent to waive, requires no reliance or prejudice to operate against the waiving party.

Unlike the defendant in Chesner that accepted indirect proof of prior title insurance only in certain circumstances, the original creditors in the case at hand charged-off every putative class member's account.  Contrary to Asset's argument, the Court need not analyze reliance and prejudice to determine whether the original creditors waived interest.  The Court need only analyze whether the practice of charging-off an account constitutes a waiver of interest.  Most importantly, this inquiry is subject to class-wide proof, namely, the business practices of the original creditors and the purchase agreements entered into with Asset.  As such, the Court finds the class is ascertainable.

        2.    <u>Rule 23(a) Factors</u>

        a.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  There is no strict numerical requirement, but a "substantial" amount of members will suffice.  <u>Daffin v. Ford Motor Co.</u>, 458 F.3d 549, 552 (6th Cir. 2006).  In

addition, only a "reasonable estimate or some evidence of the number of class members" is required. Bentley v. Honeywell Intern., Inc., 223 F.R.D. 471, 480 (S.D. Ohio 2004). Mere speculation is insufficient. See Golden v. City of Columbus, 404 F.3d 950, 966 (6th Cir. 2005).

Asset argues the class size is speculative because this inquiry hinges on valid waiver of post charge-off interest. It asserts it would have to conduct an individual review of each of the 500,000 accounts open during the time specified in the class definition (July 2010 – Aug. 2011). Plaintiffs claim that Asset admitted in its discovery response that there are 500,000 potential members. Both parties are incorrect.

Identifying the class members does not require a determination of valid waiver. It only requires Asset to identify charged-off debts it purchased from creditors that waived interest to which Asset subsequently added interest for the period before it purchased the accounts. Plaintiffs are incorrect that Asset admitted there are 500,000 members. Only those accounts that meet the class definition are included.

It is clear from the evidence presented that the class will be substantial in size. Asset is in the business of purchasing charged-off debt. Plaintiffs provided evidence that WFNB sold Guimond's account in a package containing 39,917 accounts and Chase sold Petrilli's account in a package of 25,716 accounts. Moreover, Asset produced credit card account purchase agreements with other creditors that do not charge post charge-off interest. These include Wells Fargo, HSBC, Wachovia, CitiFinancial Inc., Huntington National Bank, PREMIER Bankcard, and World's Foremost Bank of Nebraska. If Asset added interest to these accounts for the period before it owned them, those debtors may also meet the class definition. It is clear the

8

class will potentially involve tens of thousands of individuals, thereby satisfying the numerosity requirement.

> b.    Commonality

Rule 23(a)(2) requires there be "questions of law or fact common to the class." There need only be one question common to the class, "the resolution of which will advance the litigation."  Sprague, 133 F.3d at 397.  However, where "each plaintiff's claim depend[s] upon facts and circumstances peculiar to that plaintiff, class-wide relief [is] not appropriate."  Id. at 398.

Here, the question common to each Plaintiff is whether the original creditor waived interest when it charged-off the account and stopped adding interest.  This requirement is satisfied.

> c.    Typicality

Typicality and commonality often overlap, as a finding of typicality necessarily presupposes a finding of commonality.  See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 n.5 (2011).  "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'"  Beattie, 511 F.3d at 561 (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996).  However, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law."  Senter v. Gen. Motors Corp., 532 F.2d 511, 525 n.31 (6th Cir. 1976).

Asset argues there are at least eighteen issues of law or fact unique to each potential class member.  However, as previously addressed, these issues are collateral

and/or irrelevant.  Clearly, Plaintiffs' claims arise from the same practice; i.e., Asset's purchase of charged-off debts and subsequent addition of interest on the principal amount prior to ownership.  In addition, the implied waiver theory underlying Plaintiffs' claims is common to the class.  Therefore, the typicality requirement is satisfied.

d.    Adequacy

Rule 23(a)(4) requires the class representative to fairly and adequately represent the interests of the putative class.  "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-626 (1997).  In addition, the court must determine if class counsel are qualified to represent the class and whether class members have "interests that are not antagonistic to one another."  Stout v. J.D. Byrider, 228 F.3d 709, 717 (6th Cir. 2000).

In support of counsel adequacy, Plaintiffs' counsel submitted extensive evidence of their qualifications and experience regarding class action lawsuits.  In addition, the class members share the same injury and do not have competing interests.  "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to 'vigorously prosecute the interests of the class.'"  Id. (quoting In re Am. Med. Sys., Inc., 75 F.3d at 1083).  Each class member seeks damages for the deceptive practice of Asset unlawfully attempting to collect interest on the accounts.  There are no potential issues of conflict, nor does Asset raise any legitimate concerns.  Asset claims both Petrilli and Guimond are not personally knowledgeable about their claims, which defeats adequacy.  However, it is class counsels' "diligence, wisdom, and integrity" upon which class members rely to prosecute their claims.  Imhoff Inv., LLC v. SamMichaels, Inc.,

10

No. 10-10996, 2012 WL 4815090, *2 (E.D. Mich. Oct. 1, 2012) (citing <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 549-50 (1949)).   Whether Petrilli and Guimond can articulate the legal theory of their claims in a deposition is of no import, and Plaintiffs have otherwise demonstrated the adequacy requirement.

### 3.   Rule 23(b)(3) Factors

Plaintiffs must also demonstrate compliance with one of the types of class actions specified in Rule 23(b).   Here, Plaintiffs seek to certify their class in accordance with Rule 23(b)(3), which requires proof of superiority and predominance.

### a.   Superiority

A class action is superior in circumstances "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, [and thus] aggrieved persons may be without any effective redress unless they may employ the class-action device."   <u>Young v. Nationwide Mut. Ins. Co.</u>, 693 F.3d 532, 545 (6th Cir. 2012) (quoting <u>Deposit Guar. Nat'l Bank v. Roper</u>, 445 U.S. 326, 339 (1980)).   A class action is not the superior method of adjudication if the court must make individual inquiries.   <u>Id.</u>   In situations where class members are unaware of a violation of the law, and thus are unlikely to file individual suits, a class action may be superior to properly vindicate rights.   <u>Id.</u>

Here, individual class members are likely to be unaware of any violation.   There is evidence that the class potentially consists of tens of thousands of members.   In addition, estimated statutory damages for violations of the FDCPA are likely to be fairly small.   Therefore, Plaintiffs demonstrated that a class action is the superior method of adjudication in this case.

b.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Windsor, 521 U.S. at 632.  In order to demonstrate predominance, Plaintiffs must demonstrate that the issue of waiver predominates over other issues in the litigation.  See In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 136.  In addition, variations of defenses and damages do not destroy predominance when liability may be determined on a class-wide basis.  See Beattie, 511 F.3d at 564 (citing In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 138)).

As discussed above, class-wide liability depends on whether the original creditor waived interest.  This issue predominates over any individual issues such as damages or defenses Asset may assert during the course of litigation.

Asset asserts that the differing amounts of actual damages destroy predominance because the Court must inquire into each Plaintiff's account balance and determine how much interest Asset added.  The general rule is that variations of damages among class members do not necessarily destroy predominance.  Because the central issue in this matter can be determined on a class-wide basis, Plaintiffs have satisfied the predominance requirement.  See Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 298 (5th Cir. 2001) ("Although calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue.").  In addition, Plaintiffs seek statutory damages for FDCPA violations, which do not require intense fact finding to calculate.

12

4.    <u>Conclusion</u>

In sum, Plaintiffs affirmatively demonstrated their compliance with Rule 23.  <u>See</u>
<u>Wal-Mart</u>, 131 S. Ct. at 2551.

**B.    Summary Judgment**

The Court now turns to the parties' cross-motions for summary judgment.  Each
motion is evaluated on its own merits.  <u>See</u> <u>La Quinta Corp. v. Heartland Props. LLC</u>,
603 F.3d 327, 335 (6th Cir. 2010).

1.    <u>Standard of review</u>

Summary judgment is appropriate only when there is "no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).   The central inquiry is "whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52
(1986).  Rule 56 mandates summary judgment against a party who fails to establish the
existence of an element essential to the party's case and on which that party bears the
burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine
issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  Once the moving party meets this
burden, the non-movant must come forward with specific facts supported by affidavits or
other appropriate evidence establishing a genuine issue for trial.   <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A).
In evaluating a motion for summary judgment, the evidence must be viewed in the light
most favorable to the non-moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

13

157 (1970).  The Court "must lend credence" to the non-moving party's interpretation of the disputed facts.  Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S. Ct. 1769, 1775 (2007)).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

2.    Fair Debt Collection Practices Act

Plaintiffs bring their claims under the FDCPA.  The FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  In addition, the Act prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligations) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  The standard applicable to FDCPA claims is "whether the 'least sophisticated consumer' would be misled by defendant's actions."  Wallace v. Washington Mut. Bank, F.A., 683 F.3d 323, 326-27 (6th Cir. 2012) (quoting Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 329 (6th Cir. 2006)).

3.    Discussion

Asset asserts it is entitled to summary judgment for several reasons, each of which will be addressed in turn.  Conversely, Plaintiffs argue that the conduct of the original creditors waived the right to impose interest for the period between charge-off and purchase by Asset.  Therefore, Plaintiffs assert that summary judgment on the issue of liability should be granted in their favor.

14

a.     Statute of Limitations

Asset first asserts that Plaintiffs' individual claims are barred by the statute of limitations.  An action to enforce the FDCPA must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Plaintiffs assert that the statute of limitations began to run once Asset filed the state court actions in March and July of 2011.  Asset argues the limitations period began to run on the dates it purchased and added interest to the accounts in July and October of 2007.  Plaintiffs filed their complaint on July 15, 2011.  Accordingly, only the state court actions satisfy the statute of limitations.

Asset also asserts that the collection letters sent to Petrilli in April 2010 and to Guimond in September 2009 provided notice of any potential violation.  Plaintiffs assert they did not receive notice of any potential violation until Asset filed the respective state court collection actions in 2011.  Regarding the individual state court suits, Asset argues that they do not constitute new violations of the FDCPA, but are merely continuing violations subsequently arising from the allegedly unlawful imposition of interest during 2007.  As such, Asset asserts that Plaintiffs' claims are time-barred.

In support of its argument, Asset cites Purnell v. Arrow Financial Services, LLC, 303 F. App'x 297, 301 (6th Cir. 2008) for the proposition that Plaintiffs must allege a "discrete violation of the FDCPA within the limitations period" to satisfy § 1692k(d).  In addressing false credit information reported by the defendant, the court in Purnell noted: "It is not the taint of the original decision to report the debt, but the repeated reporting of the debt within the limitations period that is the basis for plaintiff's claims."  Id. at 303.

15

Thus, the court held that the claim survived insofar as plaintiff could show that some of the violations occurred within limitations period. Id.

In the case at hand, Plaintiffs assert the state court actions are inherently separate violations of the FDCPA. (Doc. 85 at 12) ("These false and unfair collection activities, prohibited by [FDCPA], occurred when Asset filed their suits against [Plaintiffs]."). Regardless of whether Guimond and Petrilli received the collection letters, Asset's state court actions qualify as "discrete" violations of the FDCPA wherein Asset is alleged to have misrepresented the amount of the debt owed by Plaintiffs in legal documents. In addition, Asset failed to provide any argument as to why the state court proceedings do not qualify as discrete violations under Purnell. Accordingly, Plaintiffs' claims are not time-barred.

###### b.  Waiver of Interest

Next, Asset argues that the original creditors did not waive the right to impose interest. Importantly, because the credit card agreements between Plaintiffs and their respective creditors contained choice of law provisions, Ohio law applies to Guimond's account and Delaware law applies to Petilli's account. Under both Ohio and Delaware law, waiver is the intentional relinquishment or abandonment of a known right. Warmack v. Arnold, 961 N.E.2d 1165, 1170 (Ohio Ct. App. 2011); AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc., 871 A.2d 428, 445 (Del. 2005). "The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it." Black's Law Dictionary (9th ed). A waiver of a contractual term may arise via express words or implied by conduct. Catz Ent., Inc. v. Valdes, 2009 WL 3003925 *8 (Ohio Ct. App. Sept. 17, 2009) (citing White Co. v. Canton Transp. Co., 2

16

N.E.2d 501 (Ohio 1936)). "Implied waiver" is defined as "[a] waiver evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." Black's Law Dictionary (9th ed). Implied forms of waiver arise in two circumstances:

> Under the doctrine of "implied wavier," a waiver of contractual rights may be found to exist where the conduct or acts of the party charged with waiver have either: (1) clearly manifested an intention to waive the contract provision or term allegedly waived *or* (2) reasonably induced the nonwaiving party to rely upon an apparent waiver or such term or provision . . . .

Vila v. BVWebTies LLC, 2010 WL 3866098 *9 n.68 (Del. Ch. Oct. 1, 2010) (quoting 13 Williston on Contracts § 39.27 (4th ed. 2000)) (emphasis added).

### i. *Undisputed Facts*

The parties do not dispute that Chase and WFNB charged-off both individual Plaintiffs' accounts. In addition, the parties do not dispute that the original creditors, at the point of charge-off, ceased adding interest on the outstanding account. It is also undisputed that Asset added interest to the accounts from the date of charge-off to the date of the state court actions.

The agreement between Asset and WFNB stated, "[t]here has been no post charge off interest or fees added to the Unpaid Balance." (Doc. 69, Ex. 2, p. 395). The definition of "Unpaid Balance" explicitly states that it is the "total outstanding unpaid balance . . . excluding post charge-off interest." (Id. at Ex. 2, p. 391). The agreement also provided that "[p]urchaser represents and warrants to Seller that Purchaser's primary purpose in purchasing Charged-off Account is to attempt legal collection of the Unpaid Balances owed on such Charged-off Accounts." (Id.)

The agreement between Asset and Chase similarly excluded post charge-off interest from the definition of "Unpaid Balance." (Id. at Ex. 2, p. 602). Further, it

17

provided that "[e]ach charged-off Account is enforceable for the full Unpaid Balance . . . and is the legal, valid and binding obligation of the Cardholder, enforceable in accordance with its terms and not subject to offsets or defenses." (Id. at Ex. 2, p. 604). It also stated: "Purchaser represents and warrants to Seller that Purchaser's primary purpose in purchasing Charged-off Accounts is to attempt legal collection of the Unpaid Balances." (Id. at Ex. 2, p. 602).

Rhiana Brown, senior director of Alliance Data, the company responsible for WFNB's customer service and management of accounts, testified that since 2003, WFNB stopped adding interest to accounts once they are charged-off as part of its normal business practice. (Id. at Ex. 4, p. 34-35). She further added that this is a strategic business decision by WFNB, because continuing to charge interest requires WFNB to send periodic statements to account holders and incur additional costs. (Id. at Ex. 4, p. 60-61).

Likewise, Thomas Henry, director of recovery management and strategy for Chase Card Services, testified that Chase does not add interest to accounts once they are charged-off. (Id. at Ex. 7, p. 15). Henry explained that this is a business decision that alleviates Chase's expense of sending periodic statements to account holders. Henry also testified that Chase believed it was good economics and considered it a "good customer practice." (Id. at Ex. 7, p. 16). In addition, in his experience, other credit card companies such as American Express chose not to impose interest once it charged-off an account. (Id. at Ex. 7, p. 18-19).

Plaintiffs also provided evidence of agreements between Asset and CitiFinancial, Wachovia Bank Nevada, HSBC Bank, Wells Fargo Bank, Huntington National Bank of

Ohio, Worlds' Foremost Bank of Nebraska, and PREMIER Bankcard LLC, all of which expressly excluded post charge-off interest from the definition of "current balance" or "unpaid balance" in the agreement.  Asset does not dispute any portions of the above referenced agreements.

ii.    <em>No Genuine Dispute of Fact Exists</em>

It is clear from the evidence above that Chase and WFNB intended to waive the right to collect interest on Plaintiffs' accounts.  Indeed, at least one court has held that such conduct "create[s] more than a 'sheer possibility' that any interest was waived." <u>Terech</u>, 854 F. Supp. 2d at 543 (holding that plaintiff stated a claim under FDCPA by alleging that the original creditor did not impose interest prior to sale to third party debt collection company).  Both creditors had the absolute right to continue to impose interest on Plaintiffs' delinquent accounts.  However, both took decisive and unequivocal acts to forgo the imposition of interest for strategic business reasons.

Representatives from both creditors testified that each company decided to cease adding interest in accordance with specific policies.  Instead of amassing interest on a worthless account, Chase and WFNB sought to sell the accounts and shift the risk of nonpayment to a third party for a nominal fee.  This practice also permitted Chase and WFNB to remove the account from the financial records and receive a bad debt tax deduction.  <u>See</u> I.R.C. § 166(a)(2).  This tradeoff leads to the reasonable inference that the original creditors' intended to waive interest.  In addition, the purchase agreements explicitly stated that the accounts do not include post charge-off interest and are only enforceable up to the Unpaid Balance.  Both creditors knowingly and intentionally

19

waived their right to interest and sold the accounts in order to take advantage of favorable accounting practices.

Asset argues that Plaintiffs' theory fails because Guimond and Petrilli had no knowledge of the waiver and did not rely upon it to their detriment.   Again, Asset mistakes Plaintiffs' theory of implied waiver for that of waiver by estoppel.   The doctrine of waiver by estoppel arises in circumstances "when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." Nat'l City Bank v. Rini, 834 N.E.2d 836, 840 (Ohio Ct. App. 2005) (quoting Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc., 804 N.E.2d 979, 1000 (Ohio Ct. App. 2004)).   "Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights."   Id.   The crucial difference is the intent of the waiving party.   Reliance and prejudice are required insofar as a plaintiff argues an estoppel theory, where no evidence of intent is required.   See 13 Williston on Contracts § 39:28 (4th ed. 2000) ("Unlike a waiver by estoppel, implied from conduct, which depends not so much upon the intention of the waiving party as upon the reliance of the nonwaiving party, a true waiver, implied from a party's conduct, by contrast, is dependent solely on what the party charged with waiver intends to do, and there is no need to show reliance by the party asserting or claiming the waiver.").   Here, Plaintiffs rely on an implied waiver theory, wherein a party intends to waive a right and does so through unequivocal acts, rather than express words.   Thus, Asset's arguments relating to estoppel issues are off point.

Asset also argues that it retracted the original creditors' waiver of interest.  Here, Michigan law applies because Asset is a Michigan corporation.  Under Michigan law, an assignee steps into the shoes of the assignor and only acquires such rights as the assignor possessed at the time of assignment.  See Coventry Parkhomes Condo. Ass'n v. Fed. Nat. Mortg. Ass'n, 827 N.W.2d 379, 382 (Mich. Ct. App. 2012).  Moreover, "the rights of the assignor and the assignee are fixed at the time of the notification of the assignment."  United States v. Gen. Motors Corp., 929 F.2d 249, 252 (6th Cir. 1991).  Therefore, Asset could not retract a waiver made by its predecessor in interest.

Because Chase and WFNB waived the interest, Asset could not retroactively impose interest for the period in which it did not own the accounts.  Moreover, Asset provides no authority that permits this practice.  To hold otherwise would create a monetary interest out of thin air and provide a potential windfall to Asset.  Undoubtedly, Asset could not impose interest for the period prior to purchase if the original creditor never imposed interest itself.  In such a circumstance, no such right would ever have existed.  The reasoning is no different here.  Therefore, the Court finds Chase and WFNB impliedly waived interest on Plaintiffs' accounts that Asset could not lawfully re-impose.

c.    Statute of Frauds

Asset also argues that because the waiver is not in writing, it is unenforceable under the Michigan statute of frauds.  See Mich. Comp Laws § 566.132(2)(c) ("promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation" shall be in writing and signed by the financial institution).  However, Ohio and Delaware law apply to the issue of waiver, and neither state statute contains

such a requirement. <u>See</u> Ohio Rev. Code Ann. § 1335.02(A); Del. Code Ann. 6 § 2714(b).

Regardless, the credit card account purchase agreements between Asset and the original creditors specifically stated that the original creditors did not impose interest on the accounts subsequent to charge-off. Certainly, this is sufficient to quell any concerns regarding unfounded parol evidence in the record.

d.    Bona Fide Error Defense

In certain situations, the FDCPA provides a safety net for debt collectors who act reasonably. Section 1692k(c), commonly referred to as the bona fide error defense, provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15. U.S.C. § 1692k(c). To demonstrate the defense, a debt collector must prove that "(1) the violation was unintentional, (2) the violation was a result of a bona fide error, and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." <u>Montgomery v. Shermata, Adams & Von Allmen, P.C.</u>, 885 F. Supp. 2d 849, 857 (W.D. Mich. 2012) (citing <u>Smith v. Transworld Sys., Inc.</u>, 953 F.2d 1025, 1034 (6th Cir. 1992)). The first element is a subjective inquiry into the "credibility of the debt collector's assertions that the FDCPA violation was not intentional" and the second and third elements are judged under an objective standard. <u>Id.</u> The defense "does not require debt collectors to take every conceivable precaution to avoid errors, it only requires reasonable precaution." <u>Charbonneau v. Asset Acceptance, LLC</u>, 611 F.

22

Supp. 2d 736, 743 (E.D. Mich. 2009).  This is a question of fact, but where the facts underlying the procedures are undisputed it may be resolved as a question of law. Montgomery, 885 F. Supp. 2d at 857.

> Asset explained that it implements the following procedures:
>
> [O]ngoing training and testing to ensure that its employees are familiar with the requirements of the FDCPA.  Asset has a designated compliance department and a training department that oversee training, application, and implementation of safeguards to ensure compliance with the FDCPA. Each account purchased by Asset is reviewed by Asset employees.  For all accounts Asset collects, Asset calculates interest on an account by account basis to ensure that the amount of interest is equal to or less than the interest Asset is authorized to collect for each account by agreement and/or by law.

(Doc. 84, Ex. 11).  Asset cited no other procedures and Plaintiffs do not dispute that these procedures are in place or that Asset adhered to them.  Asset's core argument is that it was not aware that the original creditors waived the right to collect interest and that it did not intent to violate the FDCPA.

Regardless of Asset's alleged good faith, ignorance does not afford Asset protection under the defense.  See Dunaway v. JBC & Assoc., Inc., No. 03-73597, 2005 WL 1529574 *6 (E.D. Mich. June 20, 2005) ("Contrary to counsel's suggestion at the motion hearing, a collector's ignorance of the FDCPA's prohibitions does not render the collector's violation of those prohibitions unintentional.").  Asset purchased the accounts with full knowledge that the legally enforceable unpaid balance did not include post charge-off interest.  Moreover, Asset proffers no analysis of the elements of the defense that it has the burden of demonstrating.  Other than a blanket assertion that the procedures are reasonable, Asset provides no explanation detailing how it is reasonable

for it to impose interest on an account it did not yet own.  Thus, Asset has failed to meet its burden in demonstrating it is entitled to the defense.

### e.   Materiality

Asset's final argument is that any statement or misrepresentation regarding the amount of interest must be materially false or misleading to violate § 1692e.  In other words, Asset asserts that none of the Plaintiffs knew that the original creditors waived the interest; thus there is no materially misleading statement regarding the debts. However, Asset again mistakes Plaintiffs' theory for that of estoppel.   Plaintiffs' knowledge of the debt is irrelevant, and it is clear Asset could not revoke the waiver of its predecessor in interest.  Here, Asset made false and misleading statements in its attempts to collect Plaintiffs' debts when it unlawfully added interest to the accounts. Certainly, misrepresenting the total amount of the debt in a state court pleading is material, not merely a technicality.  See Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596-97 (6th Cir. 2009) (rejecting plaintiff's claim of materiality because the violations were mere technicalities).

### 4.   Conclusion

In sum, the facts underlying the conduct constituting the original creditors' waiver of interest on the accounts are undisputed.  This conduct unequivocally evidenced the intent to waive the right to impose interest on the accounts for legitimate business reasons (saving money by not having to send periodic statements, receiving tax deductions, etc.).  Further, Asset purchased the debts subject to the waiver, thereby precluding Asset from imposing interest or revoking the original creditors' waiver.  As such, Asset's false statements regarding the total amount of the debt in the collection

24

actions constitutes violations of § 1692e(2)(A) and § 1692f(1).  See Duffy v. Landberg, 215 F.3d 871 (8th Cir. 2000) (slight overstatement of less than two dollars of interest violated § 1692f(1)).

## III.   CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' Renewed Motion for Class Certification, **GRANTS** Plaintiffs' Motion for Summary Judgment as to Liability, and **DENIES** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                    s/Marianne O. Battani
                                    MARIANNE O. BATTANI
                                    UNITED STATES DISTRICT JUDGE

DATE:  August 7, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon all parties of record via the Court's ECF Filing System.

                                    s/Bernadette M. Thebolt
                                    Case Manager